**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CEDRIC A. GLAZE, | : | Case No. 2:22-cv-2855 |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | District Judge Edmund A. Sargus, Jr. |
| vs. | : | Magistrate Judge Elizabeth P. Deavers |
| | : | |
| DONALD MORGAN, et al., | : | |
| | : | |
| Defendants. | : | |

**ORDER AND**
**REPORT AND RECOMMENDATION**

Plaintiff, a prisoner previously at the Ross Correctional Institution (RCI), currently located at the Ohio State Penitentiary (OSP), has filed a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 against thirty-five defendants, including Ohio Department of Rehabilitation and Correction (ODRC) officials and RCI employees. (Doc. 1, Complaint at PageID 9-17). By separate Order plaintiff has been granted leave to proceed *in forma pauperis.* This matter is before the Court for a *sua sponte* review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B); § 805, 28 U.S.C. § 1915A(b).

**Screening of Plaintiff's Complaint**

**A. Legal Standard**

Congress enacted 28 U.S.C. § 1915, the federal *in forma pauperis* statute, seeking to "lower judicial access barriers to the indigent." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). In doing

so, however, "Congress recognized that 'a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits.'" *Id.* at 31 (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To address this concern, Congress included subsection (e)(1) as part of the statute, which provides in pertinent part:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
>
> * * *
>
> (B) the action or appeal—
>
> (i) is frivolous or malicious;
>
> (ii) fails to state a claim on which relief may be granted; or
>
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B); *Denton*, 504 U.S. at 31. *See also* § 1915A(b). Thus, § 1915(e) requires *sua sponte* dismissal of an action upon the Court's determination that the action is frivolous or malicious, or upon determination that the action fails to state a claim upon which relief may be granted.

To properly state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal *and* factual demands

---

[1] Formerly 28 U.S.C. § 1915(d).

on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted). Further, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976–77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### B. Allegations in the Complaint

In the complaint, plaintiff alleges that defendants retaliated against him for filing grievances and lawsuits. (*See* Doc. 1-1, Complaint at PageID 19). He further contends that he was subjected to excessive force and the denial of medical treatment for the resulting injuries in

violation of the Eighth Amendment and deprived of his due process rights in connection with disciplinary hearings. Plaintiff also brings supplemental state-law claims against defendants.

Plaintiff first claims that on February 13, 2021, at RCI, plaintiff was sent to restrictive housing for being in possession of contraband. (*Id.* at PageID 20). According to plaintiff, he filed a grievance against defendant Lieutenant Robert Lindsey, based on his claim that Lindsay—who confiscated the contraband—did not write a contraband control slip as required by ODRC policy. Plaintiff claims that the relevant policy specifies that if the confiscated property is greater than $150 dollars and cannot be given back to the inmate, that the property had to be sent home to the original owner, auctioned, or destroyed. Plaintiff claims that he was retaliated against for submitting the grievance, noting that he "uncovered their illegal criminal activities, that they are taking the contraband home and selling it for personal gain." (*Id.*).

On February 23, 2021, he claims that defendant officers Cash and Starvers retaliated against him for filing his grievance against Lindsay. (*Id.* at PageID 20-21). Plaintiff alleges that Cash harassed him about his Islamic head wear, before assaulting him with Starvers. Plaintiff claims that during the incident, Starvers twisted his arm and bent his fingers back in an attempt to break them and Cash "rammed my face into a concrete pillar twice." (*Id.* at PageID 21). Plaintiff further claims that Starvers stated he was going to break his hand and make sure plaintiff would not write any lawsuits. Plaintiff claims Cash also purposefully broke his prescription eyeglasses during the attack. According to plaintiff, Cash wrote a conduct report stating that plaintiff attempted to run from him. Plaintiff claims that he was improperly found guilty of the conduct violation by defendant Lyons at the resulting disciplinary hearing.

Next, on March 12, 2021, plaintiff claims that defendant Lt. Shoemaker stopped him on his way to breakfast and told him to go get his "covid mask." (*Id.* at PageID 23). Plaintiff alleges that when he went into his cell to get the mask, Shoemaker directed officer Smith to shut his cell

door.  Plaintiff claims that he requested to go to breakfast but was denied.  He further alleges that after plaintiff continued to request to be released defendants Shoemaker, Pinson, Smith, and Ewry, and other officers, came to his cell and attempted to intimidate him.  Plaintiff indicates that he filed a grievance concerning the incident.

The following day, on March 13, 2021, plaintiff claims that defendant Lt. Raypole stopped him on the way to breakfast, indicating the stop was "because you won't stop writing these stupid ass grievances" or keep his mouth shut.  (*Id.* at PageID 24).  According to plaintiff, Raypole further stated that plaintiff should be careful of his next words, noting that "you look a little high I'd hate to see you fall down some stairs."  (*Id.*).  Plaintiff indicates that defendant officers Pinson, Tedesko, Bailey, and other unidentified individuals started to laugh.  Plaintiff claims that Raypole denied him the opportunity to go to breakfast, ordering him to his cell before the remaining officers boxed him in.

Plaintiff alleges that he attempted to return to his cell and informed the various officers that he would be writing a grievance against them.  Plaintiff claims that defendant officer Braxton stated "I don't give a fuck about your little lawsuit you have to make it to court first."  (*Id.* at PageID 25).  Plaintiff alleges that defendant officer John Doe #4 subsequently accused him of being high and "grabbed me so forcefully and twisted my arm so violently he nearly pushed me over the stairs."  (*Id.*).  He further alleges that this defendant pushed him into a door, hitting his face on the steel door frame before stating that he would show plaintiff how they deal with inmates who file lawsuits at RCI.  (*Id.* at PageID 25-26).

Plaintiff alleges that he was escorted to the captain's office.  According to plaintiff, he was attacked by John Doe #4, Pinson, Tedesko, Raypole, and Braxton.  Specifically, plaintiff claims that Tedesko pushed him from behind as he entered the office and Raypole punched him in the face three times, kneed him in the face twice, and rammed his head into a steel filing cabinet.

Plaintiff further alleges that he nearly lost consciousness and fell to the ground, when John Doe #4 started punching him in the face, Braxton kicked him repeatedly, and Pinson struck him the face with a PR-24.  Plaintiff claims he was then maced in the face for nearly six seconds "from an unsafe distance." (*Id.* at PageID 26).  Plaintiff claims that after he was handcuffed Tedesko struck him six or seven more strikes with a PR-24 and a Raypole kicked him in the stomach. (*Id.* at PageID 26-27).

According to plaintiff, Pinson told him to write a statement stating that he was high on K-2 and that he fell and hurt himself or "he would not make it out of the captain's office alive." (*Id.* at PageID 27).  After plaintiff refused to do so, Raypole indicated that if he would write the statement that they would bring him to medical, back to his cell, and they would not write him up.  Plaintiff again refused.  Before exiting the captain's office, plaintiff alleges that Tedesko maced him directly in his mouth, punched him in the stomach, and said "you're now officially welcomed to Ross Correctional Institution." (*Id.* at PageID 28).

Plaintiff alleges that he was denied medical care following the attack by defendant nurses Ragland and Kovaleski.  Plaintiff informed the nurses that he had been attacked by multiple officers and hit with a baton in the head, but Ragland allegedly accused him of lying.  After wiping the blood from his face, however, plaintiff claims that Ragland's facial expression changed and she stated "this is bad," before noting that plaintiff needed stitches. (*Id.* at PageID 29).  Tedesko allegedly said "no outside doctors because the[y're] going to ask what happened he's going to start singing then we're in a world of shit." (*Id.*).  Kovaleski instead said she could use superglue and tape.

Plaintiff claims that his wound was glued shut, but that he was not provided with any additional medical care.  As a result of the attack, plaintiff claims that he had "a hole in my face above my eye you could see to the bone," his left temple was swollen to the point that he could

not open his mouth, he was vomiting violently, and he could not turn his neck. (*Id.* at PageID 29-30, 31). He claims that he sustained additional injuries to his legs, back, ribs, and wrists. According to plaintiff, he was not permitted to decontaminate from the OC spray and the defendant nurses refused to document or treat any of his other injuries. Plaintiff alleges that Ragland stated "she was tired of hearing [plaintiff's] bullshit get him out of here before I beat his ass" and Koveleski stated "I should have glued his mouth shut." (*Id.* at PageID 30).

Plaintiff claims he was taken to a strip cage, where he continued to vomit. Plaintiff further alleges that defendant John Doe #3 told him to clean up the cage and threatened him with mace, while making him mop up the cell. Plaintiff was subsequently taken to a restrictive housing cell. According to plaintiff, every time he tried to eat he would vomit and shake violently. Despite experiencing pounding headaches and dizzy spells, plaintiff claims he was nevertheless denied medical for days, with the medical staff refusing to change the bandages on his wound. Plaintiff claims his bandage was soaked so bad that blood was running down his face and that it continued to bleed for several weeks. (*Id.* at PageID 30-31). Plaintiff claims that one of the officers in the attack issued a retaliatory conduct report against him and "planted illegal drugs on me to try to corroborate some false theory that I was under the influence." (*Id.* at PageID 31).

Next, plaintiff alleges that on March 19, 2021, he was informed by an officer that RCI staff members planned to have another inmate assault him "to justify the injuries that I received." (*Id.* at PageID 31-32). Plaintiff claims he was subsequently placed in a cell with inmate Reid, who plaintiff claims immediately began to threaten him. Plaintiff claims that Reid informed him "they really want me to kill you." (*Id.* at PageID 33). Plaintiff indicates that he was able to talk Reid out of attacking him. Later in the complaint, plaintiff claims that Shoemaker conveyed her disappointment with Reid not assaulting plaintiff "like she instructed him to do." (*Id.* at PageID

36). He further alleges that Shoemaker had another inmate request that plaintiff drop his grievances "because if I did not I would be killed." (*Id.* at PageID 37).

On the same date—six days after the prior alleged attack—plaintiff claims he was again attacked. Plaintiff alleges that Shoemaker stopped him while on his way to dinner and again told him to retrieve his mask and accused him of being high. Plaintiff claims he informed the guards that he was not high and did not have a mask. According to plaintiff, defendants Lt. Doughty and Ewry grabbed him, and Ewry "windmill slammed" plaintiff on his face and put his knee on his neck while other officers attacked him. (*Id.* at PageID 34). Despite other inmates protesting, plaintiff claims that defendant Walter told them to mind their business and Ewry kept his knee on plaintiff's neck for five minutes or more. Plaintiff claims the attack resulted in his wound reopening. He further indicates that he spoke to defendant inspector Wellinghoff after the incident, but was told the events were not on camera.

Plaintiff claims that he was denied legal materials from February 13, 2021 until April 26, 2021 while he was in isolation. He further alleges that Shoemaker had his cell searched four days in a row to look for legal documents. (*Id.* at PageID 37). Plaintiff claims that Shoemaker took witness statements from his cell and poured coffee on the remaining papers. Plaintiff alleges that defendant Gibson and Lindsay "destroyed my property and legal materials and documents to prevent evidence of wrongdoing by staff." (*Id.* at PageID 42, 44). According to plaintiff, destruction of his documents was carried out in retaliation for his filing grievances or pursuing lawsuits and prevented him from filing a traverse in his habeas corpus action, which caused the petition to be denied.

On April 30, 2021, after plaintiff indicates he pursued a preliminary injunction, plaintiff claims that he was attacked for the fourth time in sixty days by defendant officers Brown, Knight, and Angelo. (*Id.* at PageID 37). Plaintiff claims as a result of the incident—during which he

8

alleges he was brutally beaten with closed fist strikes to the body and face—he received a retaliatory disciplinary infraction and was charged with felony assault. (*Id.* at PageID 37-38). Plaintiff claims he asked John Doe #3 for mental health treatment prior to the incident, but "[t]he mental health officer cause he clearly is not a doctor blatantly told me, 'there is nothing he can do for me.'" (*Id.* at PageID 38).

Next, plaintiff claims that he organized a hunger strike on May 13, 2021. (*Id.* at PageID 39). Plaintiff claims ten inmates participated and all were beat, maced, and harassed. According to plaintiff, defendants Raypole, Pinson, and Spitnagel entered his cell and strip searched him and his cellmate. Plaintiff claims that defendant Charlton, who remained outside the cell, had the cameras turned off during the incident. Plaintiff alleges that during the course of the strip search Spitnagel stated that plaintiff needed to stop filing grievances and punched him in the face three times. Plaintiff claims the attack resulted in his nose being broken and a black eye. (*Id.* at PageID 39-40).

Plaintiff alleges that he informed the RCI staff that were present that he had been attacked but they ignored him and continued with the search of his cell. (*Id.* at PageID 40). Plaintiff claims defendant Sheppard shushed him and told him to wait until the supervisors leave. According to plaintiff, Sheppard, Charlton, Bailey, and Pinson subsequently came to plaintiff's cell. Plaintiff claims that Sheppard ordered him onto his knees and "stated he had something to keep my mouth shut and told me to suck his dick," before grabbing plaintiff's hair, pulling a braid from his scalp, and spraying him with mace. (*Id.* at PageID 40-41). Plaintiff alleges that Charlton and Bailey began to punch and kick him while Pinson blocked the door. Plaintiff claims he was given a false conduct report in connection with the incident. (*Id.* at PageID 41).

Plaintiff next claims defendant Lt. Lindsey escorted him to an isolation cell and placed him on property restriction. According to plaintiff, he informed Lindsey of the prior assault and

9

requested a Prison Rape Elimination Act (PREA) complaint and medical treatment. Plaintiff claims Lindsey said he was not concerned and left plaintiff without being decontaminated from the mace in a cell with no water. Plaintiff further claims that there was black mold in the cell and that he was kept with no clothing, underwear, socks, or t-shirts for over 80 days, from May 14, 2021 until August 18, 2021. Plaintiff claims that he was only provided with cleaning supplies on one occasion, and that he was only given chemicals with no cleaning rags. (*Id.* at PageID 41-42).

Plaintiff next alleges that he sent his mother a video message of the injuries sustained during the alleged attacks. Plaintiff claims that defendants warden Donald Morgan, institutional inspector Todd Diehl, and Wellinghoff immediately turned his phone and JPAY privileges off and he was charged with false disciplinary reports. (*Id.* at PageID 42-43). Plaintiff alleges that these defendants acted to prevent contact with his family, see medical, or otherwise document his injuries until his wounds healed. (*See id.* at PageID 43, 48-49).

Plaintiff claims that he was called to Wellinghoff's office to file a PREA complaint concerning the May 13, 2021 incident involving Sheppard, Pinson, Bailey, and Carlton. According to plaintiff, he reported that he had been subjected to assaults in retaliation for filing grievances, including the March 19, 2021 incident when plaintiff alleges Ewry placed his knee on plaintiff's neck. Plaintiff claims that Wellinghoff stated "so now you think you are George Floyd," "here we go again with this black lives matter bullshit," and that he would have done more than place his knee on plaintiff's neck. Plaintiff indicates that Wellinghoff disputed whether Ewry put his knee on his neck and did not permit him to fill out the PREA complaint. (*Id.* at PageID 46).

Plaintiff claims that after he was taken back to his cell defendant officer Smith brought him a PREA affidavit to fill out. Noting that the form contained confidential information, plaintiff refused to give Smith the form. Smith allegedly informed plaintiff that if plaintiff filed a PREA complaint he would be subject to more retaliation from staff. Plaintiff indicates that after

submitting the PREA complaint by kite to Wellinghoff, he received retaliatory, false conduct reports issued Wellinghoff and Gibson, including a report falsely alleging that plaintiff wrote a letter in blood threatening the lives of several staff members.  (*Id.* at PageID 47, 48).

The complaint also includes allegations about plaintiff's Rules Infraction Board (RIB) hearings and appeals.  With respect to the hearings, plaintiff generally alleges that he was convicted without being given notice of hearings, denied witness and the presence of the charging officers, and found guilty based on insufficient proof.  Plaintiff includes allegations of RIB hearings on March 23, 2021, May 5, 2021, and May 20, 2021.  (*See Id.* at PageID 38, 43).  During the March 23, 2021, plaintiff claims that Lyons informed him "this is going to continue to happen" if he did not stop writing grievances and Wellinghoff told him "some time when you be quiet things blow over."  (*Id.* at PageID 49).  Plaintiff further claims that he overheard Lyons state that "I told them about these use of forces their killing me I can't keep covering their asses and go down before I retire or worse."  (*Id.* at PageID 49-50).  Plaintiff claims the hearing was continued until March 27, 2021 and that he was ultimately found guilty of several rule infractions and not-guilty of being intoxicated.  According to plaintiff, he was found guilty of rules infractions in order to prevent him from informing his family of his injuries.  (*Id.* at PageID 48).

With respect to his appeals of the RIB proceedings, plaintiff alleges that Morgan removed two pages from his appeal, had a conflict of interest, and fabricated documents.  (*Id.* at PageID 43-45).  Specifically, plaintiff alleges that Morgan "removed 2 pages from my appeal to prevent my maximum security placement from being overturned."  (*Id.* at PageID 48).

As relief, plaintiff seeks monetary damages.  (*Id.* at PageID 52).

## C. Analysis

Liberally construed, plaintiff has stated plausible First Amendment retaliation and Eighth Amendment claims (deliberate indifference, failure to protect, and/or excessive force) against

defendants Cash and Starvers, based on the February 23, 2021 alleged attack; defendants Pinson, Tedesko, Raypole, Braxton, and John Doe #4, based on the March 13, 2021 alleged attack; defendants Shoemaker, Doughty, Ewry, and Walter, based on the March 19, 2021 alleged attack; defendants Brown, Knight, and Angelo, based on the April 30, 2021 alleged attack; and against defendants Raypole, Pinson, Spitnagel, Charlton, Sheppard, and Bailey, based on the May 13, 2021 alleged attack.

Plaintiff may also proceed with his First Amendment claims against defendants Shoemaker Gibson, and Lindsay, based on his allegation that these individuals destroyed his property and legal materials in retaliation for filing grievances; against defendants Wellinghoff, Smith, and Gibson, for their alleged retaliation against plaintiff for filing a PREA complaint; and against defendants Erdos, Deihl, and Wellinghoff, based on his allegation that these defendants retaliated against him by terminating his phone and JPAY privileges to conceal plaintiff's injuries.  Out of an abundance of caution, plaintiff may also proceed with claims against defendants Lyons, Mrs. Wellinghoff, and Erdos based on his allegation that these defendants deprived him of due process and retaliated against him in connection with the RIB proceedings and appeal. [2]

Plaintiff may also proceed with his Eighth Amendment deliberate indifference claims against Ragland, Kovaleski, and John Doe #3 based on plaintiff's allegations regarding their denial of medical care following the March 13, 2021 alleged attack.  Similarly, plaintiff may proceed

---

[2] Plaintiff asserts that the disciplinary infractions resulted in a "Level E," "maximum security placement." (Doc. 1-1, Complaint at PageID 47).  Although plaintiff anticipated a transfer to the Southern Ohio Correctional Facility in the complaint (*see id.*), plaintiff was transferred to the Ohio State Penitentiary (OSP).  *See Sandin v. Conner*, 515 U.S. 472 (1995) (holding that the Fourteenth Amendment confers on prisoners only a "limited" liberty interest "to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or which "will inevitably affect the duration of his sentence"); *Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (ruling that an inmate's transfer to Ohio's "supermax" prison (OSP) "imposes an atypical and significant hardship" implicating a liberty interest that warrants due-process protection, given the combination of extreme isolation of inmates, prohibition of almost all human contact, indefinite duration of assignment, and disqualification for parole consideration of otherwise eligible inmates).  At this juncture, the undersigned concludes plaintiff's claims regarding the RIB proceedings and appeal are worthy of further development and may proceed.

with his Eighth Amendment claims against defendant Lindsay based on plaintiff's allegation that Lindsay denied his request for medical attention following the May 13, 2021 incident and subjected him to alleged unconstitutional cell conditions.

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes that these claims (as well as plaintiff's supplemental state-law claims against these defendants) are deserving of further development and may proceed at this juncture.

Plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

As an initial matter, plaintiff's claims against defendants in their official capacities are subject to dismissal. As noted above, plaintiff seeks relief in the form of money damages. (*See* Doc. 1-1, Complaint at PageID 52). Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139 (1993); *Edelman v. Jordan*, 415 U.S. 651 (1974). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663; *Ford Motor Company v. Dept. of Treasury*, 323 U.S. 459, 464 (1945). A suit against defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which defendants are agents. *Monell*, 436 U.S. at 690. Thus, actions against state officials in their official capacities are included in this bar. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). *See also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009) ("[A]n official-capacity suit against a state official is deemed to

13

be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)). Therefore, all of the named defendants are immune from suit in their official capacities to the extent that plaintiff seeks monetary damages.

The complaint should also be dismissed to the extent that plaintiff seeks to hold any defendant liable for the use of threats, slurs, or other insults. The complaint includes a variety of alleged verbal harassment and threats by various defendants. However, plaintiff fails to state a viable claim under § 1983 based on these allegations, which requires a showing of a deprivation of "a right secured by the United States Constitution or a federal statute." *See Spadafore v. Gardner*, 330 F.3d 849, 852 (6th Cir. 2003). It is well-settled that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (per curiam) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)); *see also Chilcott v. Erie Cnty. Domestic Relations*, 283 F. App'x 8, 11 (3rd Cir. 2008) (and Sixth, Fifth and Tenth Circuit cases cited therein). Additionally, while prison officials should not use degrading or racist language when interacting with inmates, the use of such language does not rise to the level of a constitutional violation. *See Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *4 (6th Cir. Mar. 31, 2017). A prison official's use of racial slurs and other insults, "although unprofessional and reprehensible, does not rise to the level of constitutional magnitude" and is insufficient to support a constitutional claim for relief. *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (citing *Torres v. Oakland County*, 758 F.2d 147, 152 (6th Cir. 1985)); *see also Ivey*, 832 F.2d at 954. *Cf. Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545-46 (6th Cir. 2004). Accordingly, to the extent that plaintiff seeks to hold any defendant liable for verbal harassment, threats, or racial language he fails to state a claim upon which relief may be granted.

14

The complaint should also be dismissed as to defendants Sgt. Kyle, Ms. Newman, and Ms. Bethel.  Plaintiff names these individuals as defendants (*see* Doc. 1-1, Complaint at PageID 15, 16), however the complaint contains no factual allegations against them.[3]  As noted above, to survive dismissal for failure to state a claim upon which relief may be granted, plaintiff must plead factual content that allows the Court to reasonably infer that a named defendant is liable for the alleged misconduct.  *Iqbal*, 556 U.S. at 678.  Absent any specific factual allegations against these defendants, the complaint should be dismissed as to Kyle, Newman, and Bethel for failure to state a claim upon which relief may be granted.

To the extent that plaintiff alleges that defendants deprived him of his property without due process, plaintiff's allegations are insufficient to state an actionable § 1983 claim.  Plaintiff alleges that he wrote a grievance against defendant Lindsay after he claimed he confiscated plaintiff's property and seeks to hold Lindsay liable for a violation of his due process rights.  (*See* Doc. 1-1, Complaint at PageID 10, 20).  However, in order to state a due process claim in connection with the loss of his property, plaintiff must first "plead . . . that state remedies for redressing the wrong are inadequate."  *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983).  *See also Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt*, 451 U.S. 527 (1981).  "If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury."  *Jefferson v. Jefferson County Pub. Sch. Sys.,* 360 F.3d 583, 587-88 (6th Cir. 2004).  Accordingly, in order to state a procedural due process claim under section 1983 "the plaintiff must attack the state's corrective procedure as well as the substantive wrong."  *Meyers v. City of Cincinnati*, 934 F.2d 726, 731 (6th Cir. 1991) (quoting *Vicory*, 721 F.2d at 1066).  A plaintiff "may

---

3 With respect to Sgt. Kyle, plaintiff lists this defendant as defendant #27 "John Doe #2 (Unknown Sergeant Kyle)." (*See* Doc. 1-1, Complaint at PageID 15).  The complaint includes no allegation against Kyle.  Plaintiff does alleges that "John Doe #2" was involved in the March 13, 2021 alleged attack, however he identifies the unknown officer as being officer Braxton.  (*See id.* at PageID 25-26).  Braxton is named as defendant #8 in the complaint.  (*Id.* at PageID 11).

not seek relief under Section 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress [his] due process violations." *Jefferson*, 360 F.3d at 588.

Plaintiff has not alleged any facts even remotely indicating that his remedies under Ohio law to redress the wrong of which he complains are inadequate. Plaintiff's complaint fails to explain why a state tort remedy for conversion would not suffice to address his claim. *See Fox v. Van Oosterum,* 176 F.3d 342, 349 (6th Cir. 1999). Therefore, he fails to state a due process claim that is actionable in this § 1983 proceeding.

The complaint should also be dismissed to the extent that plaintiff seeks to hold any defendant liable for "tacit authorization" of the actions of others. Plaintiff seeks to hold defendant warden Erdos, assistant director Kathy Wilkens, and institutional inspector Todd Deihl liable, in part, on this basis. (*See* Doc. 1-1, Complaint at PageID 9, 17). For example, plaintiff's sole allegation against defendant assistant director Wilkins is that she had "full knowledge of staff assaulting inmates and encourage[d] this unlawful behavior." (*Id.* at PageID 45). However, *respondeat superior* does not apply to Section 1983 claims and may not serve as a basis for liability. *See Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Social Servs.,* 436 U.S. 658 (1978); *Hill v. Marshall,* 962 F.2d 1209, 1213 (6th Cir. 1992). "[Section] 1983 liability of supervisory personnel must be based on more than the right to control employees." *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984). Furthermore, § 1983 liability is premised on active unconstitutional behavior and not a mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The mere fact that these defendants have

supervisory roles or failed to take corrective action is not enough to impose liability under Section 1983.[4]

The complaint should also be dismissed against defendants Baldmin and Chapman. Plaintiff seeks to hold these defendants liable based on their alleged failure to protect him from inmate Reid. (*See* Doc. 1-1, Complaint at PageID 14, 32). As noted above, plaintiff alleges that Shoemaker and other undisclosed RCI staff arranged for Reid to attack plaintiff to cover up his prior injuries and that Chapman and Baldmin "completely ignored the fact that [Reid] was threatening to assault him." (*Id.* at PageID 32). While a prison official may be held liable based on the failure to protect an inmate from an attack if he knows that the inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it," *Farmer v. Brennan*, 511 U.S. 825, 847 (1994), the Sixth Circuit has determined that "it is the reasonably preventable assault itself, rather than any fear of assault that gives rise to a compensable claim under the Eighth Amendment." *Wilson v. Yachlich*, 148 F.3d 596, 601 (6th Cir. 1998) (quoting *Babcock v. White*, 102 F.3d 267, 272 (7th Cir. 1996)). Plaintiff in this case alleges that he was not ultimately attacked by Reid or any other inmate. *See Seabrooks v. Core Civic*, No. 3:17-cv-1328, 2019 WL 1015093, at* 4 (M.D. Tenn. Mar. 4, 2019) ("The holding in *Wilson* required dismissal of Plaintiff's Eighth Amendment failure to protect claim given Plaintiff's lack of allegations that he suffered an actual physical injury caused by Defendants' alleged deliberate indifference to his safety.") (Report and Recommendation), *adopted*, 2019 WL 1359492 (M.D. Tenn. Mar. 26, 2019). *See also Wells v. Jefferson Cnty. Sheriff's Dep't.*, 159 F.Supp.2d 1002, 1010 (S.D. Ohio 2001). Accordingly, plaintiff's deliberate indifference claim against defendants

---

[4] As noted above, the undersigned has permitted plaintiff to proceed with his First Amendment claims against defendants Erdos and Deihl based on his allegation that these defendants—with Wellinghoff—retaliated against him by terminating his phone and JPAY privileges. However, for the reasons stated above, plaintiff should not be able proceed with any claims against these defendants premised on *respondeat superior* or "tacit authorization" of the actions of others.

Chapman and Baldmin should be dismissed for failure to state a claim upon which relief may be granted.

Accordingly, in sum, plaintiff may proceed with his First Amendment retaliation and Eighth Amendment claims against defendants Cash, Starvers, Pinson, Tedesko, Raypole, Braxton, John Doe #4, Shoemaker, Doughty, Ewry, Walter, Brown, Knight, Angelo, Spitnagel, Charlton, Sheppard, and Bailey, based on the attacks alleged in the complaint. Plaintiff may also proceed with his First Amendment retaliation claims against Shoemaker, Lindsay, Gibson, Bryan Wellinghoff, Smith, Erdos, and Deihl and his Eighth Amendment, deliberate indifference claims against Ragland, Kovaleski, John Doe #3, and Lindsay. Finally, plaintiff may proceed with his retaliation and due process claims against defendants Lyons, Mrs. Wellinghoff, and Erdos. Plaintiff may also proceed with his supplemental state-law claims against these defendants at this juncture.

However, plaintiff has failed to provide service copies of the complaint, summons and U.S. Marshal forms for service on defendants. It is therefore **ORDERED** that plaintiff, **within thirty (30) days** of the date of this Order, submit a copy of the complaint and completed summons and U.S. Marshal form for defendants Cash, Starvers, Pinson, Tedesko, Rapyole, Braxton, Shoemaker, Doughty, Ewry, Walter, Brown, Knight, Angelo, Spitnagel, Charlton, Sheppard, Bailey, Gibson, Bryan Wellinghoff, Smith, Erdos, Deihl, Ragland, Kovaleski, Lindsay, Lyons, and Mrs. Wellinghoff. Once the Court receives the requested forms and service copies of the complaint ***for each of these defendants***, the Court will order service of process by the United States Marshal. Plaintiff is **ADVISED** that failure to comply with this Order could result in dismissal of his case for failure to prosecute.

Before service may be issued upon any remaining John Doe defendants, plaintiff must file a motion to issue service setting forth the identities of the unidentified defendants. Plaintiff is

18

therefore **ORDERED** to file a motion to issue service, including United States Marshal and summons forms, if and when plaintiff discovers the identity of the unnamed defendants through discovery. Plaintiff is advised that no service will be issued on the unnamed defendants unless plaintiff complies with this Order.

Having found that the remaining claims alleged in the complaint fail to state a claim upon which relief may be granted, plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

### IT IS THEREFORE RECOMMENDED THAT:

1. The complaint be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B), with the exception of plaintiff's First Amendment retaliation and Eighth Amendment claims against defendants Cash, Starvers, Pinson, Tedesko, Rapyole, Braxton, John Doe #4, Shoemaker, Doughty, Ewry, Walter, Brown, Knight, Angelo, Spitnagel, Charlton, Sheppard, and Bailey; First Amendment retaliation claims against Shoemaker, Gibson, Bryan Wellinghoff, Smith, Erdos, Deihl; Eighth Amendment, deliberate indifference claims against Ragland, Kovaleski, John Doe #3, and Lindsay; First Amendment retaliation and due process claims against defendants Lyons, Mrs. Wellinghoff, and Erdos; and supplemental state-law claims against these defendants.

2. The Court **DECLINE to exercise supplemental jurisdiction** under 28 U.S.C. § 1367(c)(3) over any state-law claims against dismissed defendants Wilkins, Baldmin, Chapman, Kyle, Newman, and Bethel, and **DISMISS** any such claims **without prejudice**. *See Maze v. Ironton Police Dep't,* No. 1:20-cv-402, 2020 WL 3605865, at *5 (S.D. Ohio July 2, 2020), (Report and Recommendation), *adopted,* No. 1:20-cv-402, 2020 WL 5094843 (S.D. Ohio Aug. 28, 2020).

3. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons

an appeal of any Order adopting this Report and Recommendation would not be taken in good faith, and therefore, deny plaintiff leave to appeal *in forma pauperis*. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**


Date:   February 3, 2023                              s/ *Elizabeth A. Preston Deavers*
                                                     Elizabeth A. Preston Deavers
                                                     United States Magistrate Judge

20