**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**CEDRIC A. GLAZE,**

**Plaintiff,**

**v.**

**DONALD MORGAN, *et al.*,**

**Defendants.**

**Case No. 2:22-cv-2855**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge S. Courter M. Shimeall**

## REPORT AND RECOMMENDATION

Plaintiff, an Ohio inmate proceeding without the assistance of counsel, brings this action under 42 U.S.C. § 1983 against several officials of the Ohio Department of Rehabilitation and Correction ("ODRC") for violations of his constitutional rights while incarcerated. The Court previously dismissed all other defendants and all of Plaintiff's claims except his: (1) First Amendment retaliation claim against Defendants Todd Diehl, Donald Morgan, and Bryan Wellinghoff relating to their revocation of Plaintiff's phone and JPAY privileges; (2) First Amendment retaliation claim against Defendants Cash, Jacob Gibson, Robert Linsey, Travis Raypole, Sadie Shoemaker, Nathan Spitnagel, and Lucas Sarver for adverse actions taken because Plaintiff filed or attempted to file grievances or engaged in other protected conduct; and (3) Eighth Amendment excessive force claim against Defendants Devon Angelo, Bailey, Avery Brown, Cash, Charlton, Joshua Watkins, Ewry, Joey Knight, Pinson, Raypole, Jacob Brabson, Adam Sheppard, Spitnagel, Sarver, and Tedesko.[1] (ECF No. 86.)

[1] Plaintiff was granted leave to amend his complaint to correct Defendant "Sexton" to "Jordan Brabson," correct Defendant "L. Shoemaker" to "Sadie L. Shoemaker," correct Defendant "Starvers" to "Lucas Sarver," and identify "John Doe #4" as "Joshua Watkins." (ECF No. 123.)

The remaining Defendants now move for summary judgment on these claims. (ECF No. 122.) Also pending is Plaintiff's Motion for Exhaustion Hearing. (ECF No. 140.) For the following reasons, it is **RECOMMENDED** that Defendants' Motion (ECF No. 122) be **GRANTED in part** and **DENIED in part**. It is further **RECOMMENDED** that Plaintiff's Motion for Exhaustion Hearing (ECF No. 140) be **DENIED**. To the extent that the Court construes Plaintiff's Response (ECF No. 134-13) as a motion for summary judgment on any of his claims, it is **RECOMMENDED** that Plaintiff's motion be **DENIED**.

## I. BACKGROUND

Plaintiff is an inmate who was previously held at Ross Correctional Institute ("RCI"). He generally alleges that, from February, 2021, through May, 2021, he was assaulted on multiple occasions and subjected to retaliation for filing grievances and engaging in other protected conduct. (ECF No. 124.) For ease of reference, the Undersigned discusses Plaintiff's specific allegations below as relevant to Defendant's exhaustion arguments.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 122)

Defendants argue that Plaintiff failed to exhaust his administrative remedies against the remaining Defendants. (ECF No. 122.) Plaintiff opposes. (ECF No. 134-13.)

### A. Standard of Review

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted).

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts"; instead, "there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

**B. Law & Analysis**

Plaintiff's remaining claims are as follows: (1) a First Amendment retaliation claim against Defendants Diehl, Morgan, and Wellinghoff relating to their revocation of Plaintiff's phone and JPAY privileges; (2) a First Amendment retaliation claim against Defendants Cash, Gibson, Linsey, Raypole, Shoemaker, Spitnagel, and Sarver for adverse actions, allegedly taken because Plaintiff filed or attempted to file grievances or engaged in other protected conduct; and (3) an Eighth Amendment excessive force claim against Defendants Angelo, Bailey, Brown, Cash, Charlton, Watkins, Ewry, Knight, Pinson, Raypole, Brabson, Sheppard, Spitnagel, Sarver, and Tedesko. Defendants argue Plaintiff failed to exhaust any of his claims.

### 1. The PLRA

Before commencing an action under 42 U.S.C. § 1983, prisoners are required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), to exhaust their administrative remedies. As the Sixth Circuit has explained:

> The Prison Litigation Reform Act requires state prisoners to follow and exhaust all applicable state grievance procedures before filing suit in federal court. *See* 42 U.S.C. 1997e(a); *Woodford v. Ngo*, 548 U.S. 82, 90 . . . (2006). This requirement is not jurisdictional; rather, exhaustion is an affirmative defense that must be pleaded and proved by the defendants. *Jones* [*v. Bock*], 549 U.S. [199,] 212 [(2007)]. When the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies. *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012).
>
> There is no uniform federal exhaustion standard. A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution. *Jones*, 549 U.S. at 217–19 . . . . "This court requires an inmate to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether 'those efforts to exhaust were sufficient under the circumstances.'" *Risher* [*v. Lappin*], 639 F.3d [236,] 240 [(6th Cir. 2011)] (quoting *Napier v Laurel Cty.*, 636 F.3d 218, 224 (6th Cir. 2011)).

*Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017).

The purpose of the exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Id.* at 591 (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)).

Although "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances, a plaintiff generally fails to exhaust administrative remedies by failing to include an official's name in a grievance if it is required by the applicable grievance procedures." *Hall v. Warren,* 443 Fed. App'x 99, 106 (6th Cir. 2011) (cleaned up). Ohio law requires that prisoners provide specific information in the form of "dates, times, places, the event

giving rise to the complaint and, if applicable, the name or names of personnel involved." Ohio Admin. Code § 5120-9-31(J). If a prisoner does not know the identity of the person involved, "a 'John/Jane Doe' complaint may be filed" but "the complaint shall be specific as to dates, times, places, physical descriptions of any unidentified personnel and the actions of said personnel giving rise to the complaint." *Id.*

In Ohio, the general grievance procedures are set forth in Ohio Administrative Code § 5120-9-31. This regulation creates a three-step process governing requests by inmates for relief "relat[ing] to any aspect of institutional life that directly and personally affects the [inmate]." Ohio Admin. Code § 5120-9-31(A), (J). The first step requires an inmate to "file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." *Id.* § 5120-9-31(J)(1). If the inmate is dissatisfied with the result, he may file a formal grievance with the inspector of institutional services at his institution. *Id.* § 5120-9-31(J)(2). If an inmate remains dissatisfied, he may file an appeal to the office of the chief inspector. *Id.* § 5120-9-31(J)(3). An inmate has not exhausted his remedies under § 5120-9-31 until he has received a decision on his appeal to the office of the chief inspector. *Younker v. Ohio State Univ. Med. Ctr.*, No. 2:11-cv-00749, 2013 WL 3222902, at *4 (S.D. Ohio June 25, 2013).

Grievances against the warden or inspector of institutional services—referred to as direct grievances—may circumvent this procedure. Ohio Admin. Code § 5120-9-31(L). Direct grievances must be filed with the office of the chief inspector within thirty days of the event giving rise to the complaint, and they must demonstrate that the warden or inspector of institutional services "was personally and knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation." *Id.* The chief inspector or his designee

then has thirty days to provide a written response to the direct grievance. *Id.* Their decision is final. *Id.*

The PLRA's exhaustion requirement demands compliance with all three steps. *See Reed-Bey*, 603 F.3d at 324. But when prison officials "decline to enforce their own procedural requirements," overlook the untimeliness of a grievance, and consider it on the merits, so will the courts. *Id.* at 325 (collecting cases).

**2. Defendants are entitled to summary judgment on some, but not all, of Plaintiff's claims.**

Defendants move to dismiss all of Plaintiff's claims solely on the issue of exhaustion, arguing that Plaintiff failed to complete ODRC's administrative grievance process against each specific individual before filing his Complaint. In support, Defendants provide a declaration from Ohio Department of Rehabilitation and Correction Assistant Chief Inspector Korrine Morrow, as well as Plaintiff's grievance history from September 10, 2018, through June 27, 2026. (ECF No. 122-1). Defendants contend that "only three of Plaintiff's grievances alleged that excessive force was used against him by any of the Defendants, namely Defendants Raypole, Charlton, Tedesko, and Brown." (ECF No. 122, PAGEID #: 1202.) Defendants further assert that "only eight of his grievances alleged retaliation of any sort against Defendants Raypole, Charlton, Tedesko, Diehl, Morgan, or Shoemaker." (*Id.*) Defendants argue that Plaintiff failed to exhaust each of these grievances for various reasons.

After reviewing Plaintiff's grievance history, the Undersigned finds that Plaintiff failed to exhaust some, but not all, of his claims.

For ease of reference, the Undersigned addresses Plaintiff's claims in chronological order.

**a) February 23, 2021 Incident – First Amendment retaliation and Eighth Amendment retaliation claims against Defendants Cash and Sarver**

Plaintiff alleges he filed a grievance against Defendant Linsey on February 13, 2021, for improperly handling confiscated property in violation of ODRC policy. (ECF No. 124, PAGEID #: 1297.) Plaintiff alleges Defendants Cash and Sarver assaulted him on February 23, 2021, in retaliation for the grievance he filed against Defendant Linsey. (*Id.*) According to Plaintiff, Defendant Cash harassed Plaintiff about his Islamic head wear, pulled him into an area off camera, and "rammed [his] face into a concrete pillar twice in an attempt to break [his] prescription eyeglasses." (*Id.* at PAGEID ##: 1297–98.) Defendant Sarver "grabbed [his] other arm and started to twist [his] arm behind [his] back" and "started to bend [his] fingers back on [his] right hand trying to break them." (*Id.*) Defendant Sarver stated he would break Plaintiff's hand to "make sure [he] wasn't able to write any lawsuits," and stated he would give Plaintiff "a reason to sue him [be]cause he was going to break" his hand. (*Id.*)

Plaintiff brings an Eighth Amendment excessive force claim and First Amendment retaliation claim against Defendants Cash and Sarver regarding the February 23, 2021 Incident. Assistant Chief Inspector Morrow avers in her Declaration that Plaintiff filed no grievances against Defendants Cash and Sarver between February 23, 2021, and June 30, 2022. (ECF No. 122-1, PAGEID #: 1209.) The Undersigned, however, has identified Grievance #391781751, filed on May 28, 2021, which names both Defendants Cash and Sarver and concerns the February 23, 2021 Incident. Specifically, Grievance #391781751 alleges that, on February 23, 2021, "co's cash ans starver assaulted me outside the chow hall" and "purposely [*sic*] broke [his] prescription eye glasses" and told him that "they were confiscated as contraband." (*Id.* at PAGEID #: 1244.) Defendants do not address Grievance #391781751 in their Motion, and Plaintiff's grievance

records reflect that Plaintiff received a merits-based response at each step of the grievance procedure. (*Id.* at PAGEID ##: 1244–47.)

Because Defendants bear the burden of proving the affirmative defense of failure to exhaust, their failure to address this grievance leaves them short of establishing entitlement to summary judgment on exhaustion grounds. Accordingly, it is **RECOMMENDED** that the Court **DENY** Defendants' Motion (ECF No. 122) as to Plaintiff's Eighth Amendment excessive force and First Amendment retaliation claims against Defendants Cash and Sarver arising from the February 23, 2021 Incident.

**b) March 13, 2021 Incident – Eighth Amendment excessive force claim against Defendants Watkins, Raypole, Tedesko, Brabson, and Pinson, and First Amendment retaliation claim against Defendant Raypole**

On March 12, 2021, Plaintiff alleges that he told Defendants Shoemaker, Pinson, Smith, Tackett, and Ewry that he intended to file a grievance against them for making threats to mace him and beat him and for "inappropriate supervision." (ECF No. 124, PAGEID #: 1301.) The next day, March 13, 2021, Plaintiff alleges that Defendant Raypole searched him on his way to breakfast, explaining that he was doing so "because you won[']t stop writing these stupid ass grievances." (*Id.*) After the search, Defendant Raypole ordered Plaintiff to return to his cell rather than go to breakfast, and several correctional officers "started to box [Plaintiff] in." (*Id.*)

Plaintiff asserts that, as he exited his cell, Defendant Raypole ordered him to return. (*Id.*) As Plaintiff turned to go back to his cell, Defendant Watkins forcefully grabbed him, violently twisted his arm, and nearly pushed him over the stair rail. (*Id.* at PAGEID #: 1302.) Plaintiff asserts that Defendant Raypole then ordered that Plaintiff be taken to the "captain's office." (*Id.*) As he was being walked out the door of his cell, Defendant Watkins pushed Plaintiff into a "door hitting [his] face on the steel door frame." (*Id.*)

As Plaintiff entered the captain's office, he alleges that Defendant Raypole punched him, kneed him, rammed his head into a steel file cabinet, and kicked him. (*Id.* at PAGEID #: 1303.) Plaintiff asserts that Defendant Tedesko pushed him, struck him with a baton multiple times, maced him, and punched him; Defendant Brabson kicked him twice; and Defendant Pinson struck him with a baton. (*Id.*)

Plaintiff brings an Eighth Amendment excessive force claim against Defendants Watkins, Raypole, Tedesko, Brabson, and Pinson for the March 13, 2021 Incident. He also brings a First Amendment retaliation claim against Defendant Raypole for the March 13, 2021 Incident.

On March 29, 2021, Plaintiff filed Grievance #391765741, alleging that Defendants Raypole, Tedesko, Charlton, and another officer not named as a defendant assaulted him on March 13, 2021, and that he was "taken to the captains offices and assaulted kicked, punched, and hit with sticks and maced." (ECF No. 122-1, PAGEID #: 1219.) Plaintiff did not pursue Grievance #391765741 through the third step of the grievance process. (*Id.*) The Undersigned identified no other grievances in the record concerning Plaintiff's excessive force and retaliation claims arising from the March 13, 2021 Incident. Accordingly, the Undersigned finds that Plaintiff failed to exhaust his administrative remedies as to those claims.

It is therefore **RECOMMENDED** that the Court **GRANT** Defendants' Motion (ECF No. 122) as to Plaintiff's Eighth Amendment excessive force claim against Defendants Watkins, Raypole, Tedesko, Brabson, and Pinson, and his First Amendment retaliation claim against Defendant Raypole arising from the March 13, 2021 Incident.

#### c) March 19, 2021 Incident – Eighth Amendment excessive force claim against Defendant Ewry

Plaintiff alleges that, on March 19, 2021, Defendant Ewry grabbed him, "windmill slammed" Plaintiff onto his face, and put his knee into Plaintiff's neck for at least five minutes.

(*Id.* at PAGEID #: 1311.) Plaintiff brings an Eighth Amendment excessive force claim against Defendant Ewry for the March 19, 2021 Incident.

The Undersigned identified no grievances in the record concerning Plaintiff's excessive force claim against Defendant Ewry arising from the March 19, 2021 Incident. Accordingly, the Undersigned finds that Plaintiff failed to exhaust his administrative remedies as to that claim.

It is therefore **RECOMMENDED** that the Court **GRANT** Defendants' Motion (ECF No. 122) as to Plaintiff's Eighth Amendment excessive force claim against Defendant Ewry arising from the March 19, 2021 Incident.

**d) March 29, 2026 Incident – First Amendment retaliation claim against Defendant Shoemaker**

On March 29, 2021, Plaintiff asserts that he was placed in a cell with Inmate Reid and that Defendant Shoemaker told Inmate Reid that she was "upset with him for not assaulting [Plaintiff] like she instructed him to." (ECF No. 124, PAGEID #: 1313.) Plaintiff asserts that when Inmate Reid did not act on her command, she had another inmate approach him. (*Id.* at PAGEID #: 1314.) When this second inmate did not assault him, Plaintiff alleges that Defendant Shoemaker was "so mad" that he had not ceased filing grievances that she searched his cell four days in a row and removed and/or destroyed some of his documents. (*Id.*)

Plaintiff brings a First Amendment retaliation claim against Defendant Shoemaker arising from the March 29, 2021 Incident.

On June 3, 2021, Plaintiff filed Grievance #391783191 alleging that, on March 29, 2021, Defendant Shoemaker "shook our cells down for 4 days in a row [un]til she found the statements that inmates that had been assaulted by staff wrote and stole them out [of his] cell." (ECF No. 122-1, PAGEID #: 1260–63.) The prison properly denied Grievance #391783191 as untimely

because it was filed "well outside the 14 day timeframe set by [Ohio law]." (*Id.*) Thus, Plaintiff failed to exhaust his First Amendment retaliation claim as to Defendant Shoemaker.[2]

It is therefore **RECOMMENDED** that Defendant's Motion (ECF No. 122) be **GRANTED** as to Plaintiff's First Amendment retaliation claim against Defendant Shoemaker arising from the March 29, 2026 Incident.

#### e) April 30, 2021 Incident – Eighth Amendment excessive force claim against Defendants Brown, Knight, and Angelo

Plaintiff brings an Eighth Amendment excessive force claim against Defendants Brown, Knight, and Angelo, alleging that they assaulted him on April 30, 2021, with "closed fist strikes." (ECF No. 124, PAGEID #: 1314.)

On June 3, 2021, Plaintiff filed Grievance #391783141, alleging that, on or about April 30, 2021, he was "assaulted by several staff members all on camera" and that Defendant Brown "admitted to using Hammer fist." (ECF No. 122-1, PAGEID #: 1256.) Defendants concede that Grievance #391783141 progressed to the third level of the grievance process. (ECF No. 122, PAGEID #: 1202.) Defendants represent, however, that Grievance #391783141 was not exhausted, asserting that it "was denied because it was filed well outside the fourteen days that 5120-9-31(J) allows for the filing of informal complaints." (*Id.*) Defendants cite to *Allah-U-Akbar v. Ohio* for the proposition that a "prisoner's claim is not exhausted where he has not received a merits-based response at each step of the grievance process." No. 2:19-CV-3589, 2020 WL 6440260, at *2 (S.D. Ohio Nov. 3, 2020) (quoting *Swank v. Hale*, No. 2:12-CV-1031, 2016 WL

[2] Plaintiff also named Defendant Shoemaker in Grievance #391768651, alleging that Defendant Shoemaker looked at him aggressively, told him to go back to his cell and get his mask, and then locked him down and didn't allow him to eat. (ECF No. 122-1, PAGEID ##: 1222–26.) The conduct alleged in Grievance #391768651 does not form the basis of Plaintiff's First Amendment retaliation claim against Defendant Shoemaker and thus does not exhaust Plaintiff's administrative remedies on his First Amendment retaliation claim as to Defendant Shoemaker.

1156517, at *7 (S.D. Ohio Mar. 24, 2016)). That might be true, but it does not help Defendants here.

A review of Grievance #391783141 reveals that Plaintiff received a merits-based response at each step of the grievance process. (*See* ECF No. 122-1, PAGEID ##: 1256–59.) At step one, the prison denied Grievance #391783141 because:

> I reviewed video footage that clearly shows you on the top tier running full speed while the officers observed you from the dayroom floor. They had to chase you down so that you would not further injure yourself or others. Once they were able to apprehend you, video supports it took several staff to contain you and force was used to accomplish that task. If resistance is necessary to detain an inmate, staff are trained to use closed hand strikes to the body in order to achieve compliance. Documentation shows that IHS was able to determine you were under the influence of an unauthorized substance. It appears this substance contributed to your behavior on 4/30 while housed in 1B.

(*Id.* at PAGEID #: 1259.)

At step two, the prison again denied Grievance #391783141:

> The grievant states excessive force was used during a reported use of force from April 30, 2021. To investigate this complaint, I reviewed the use of force packet for this event and case #RIB-21- 002946. I then reviewed 5120-9-01 & 02 and 5120-9-31 as well as 63-UOF-01. You were involved in a reported use of force on April 30, 2021. The reporting of this use of force was compliant with the directives set by 5120-9-02 Use of force report and investigations. 5120-9-02 also directs a designated deputy warden, for RCI that is the DWO, to review the use of force packet prepared by the shift supervisor to determine the factual circumstances, the type and amount of appropriate force, the type and amount of reasonable force and were all applicable rule, policies and post orders followed. The Deputy Warden of Operations reviewed this use of force and determined the force used was appropriate, reasonable, and compliant with AR's, Departmental policies, institutional policies and post orders. AR 5120-9-01 and DRC policy 63-UOF-01 gives employees of the Ohio Department of Rehabilitation and Correction the authority to use force in situations which it may be necessary to control inmates or respond to resistance. The staff involved in this use of force have demonstrated the need for self-defense, defense of a third party, and controlling or subduing you as you refused to obey prison rules. The staff response of using force was deemed appropriate and reasonable in this event. My investigation has found the DWO properly reviewed the packet and referred this use of force to a Use of Force Committee and the Warden concurred with this recommendation. Any concerns

> you have about this investigation or the committee's investigation and findings should be referred to the Deputy Warden of Operations.

(*Id.* at PAGEID #: 1258.)

At step 3, the Assistant Chief Inspector affirmed the denial of Grievance #391783141 after "a thorough review" of Plaintiff's appeal. (*Id.* at PAGEID #: 1257.) That review included "[p]rocedural requirements," "[p]roper investigation of your grievance," "[a]pplicable policies, procedures, administrative rules, directives and ODRC operating manuals," "documentation and related evidence," and "[i]nformation presented in your appeal." (*Id.*)

At no step of the review process did prison officials deny the grievance as untimely. Instead, they addressed it on the merits. When prison officials "decline to enforce their own procedural requirements," overlook the untimeliness of a grievance, and consider greivance on the merits, so will the courts. *Reed-Bey*, 603 F.3d at 325. Accordingly, the grievance's alleged untimeliness does not establish a failure to exhaust.

Plaintiff's Grievance #391783141 identifies Defendant Brown as a participant in the April 30, 2021 Incident. Although Plaintiff also alleges in the grievance that he was "assaulted by several staff members," he neither names Defendants Knight and Angelo nor provides sufficient factual context to identify them as participants. Ohio's grievance policy permits an inmate to file "a 'John/Jane Doe' complaint," but requires such a complaint to include "physical descriptions of any unidentified personnel and the actions of said personnel giving rise to the complaint." Ohio Admin. Code § 5120-9-31(J). Grievance #391783141 does not identify either Defendant Angelo or Knight by name, nor does it provide the descriptive information required by Ohio's grievance procedure to identify them as participants in the incident. *See Sullivan v. Kasajara*, 316 F. App'x 469, 470 (6th Cir. 2009) (affirming dismissal for failure to exhaust where the plaintiff failed to comply with the Michigan agency's procedural rule requiring the naming of each person against

whom the plaintiff grieved); *King v. Banks*, No. 2:10-cv-852, 2012 WL 1068103, at *4 (S.D. Ohio Mar. 29, 2012) (finding that inmate had failed to exhaust his administrative remedies because his grievances did not "mention . . . defendants specifically, nor [did they] give enough factual context [such] that [the] defendants would be on notice" of the plaintiff's claims); *Leonard v. Mohr*, No. 2:11-cv-152, 2012 WL 423771, at *5 (S.D. Ohio Feb. 9, 2012) (same).

The Undersigned identified no other grievances in the record concerning Plaintiff's excessive force claim against Defendants Knight and Angelo. Accordingly, the Undersigned finds that Plaintiff failed to exhaust his administrative remedies as to that claim against Defendants Knight and Angelo.

It is therefore **RECOMMENDED** that the Court **DENY** Defendants' Motion (ECF No. 122) as to Plaintiff's Eighth Amendment excessive force claim against Defendant Brown regarding the April 30, 2021 Incident, and **GRANT** Defendants' Motion as to Plaintiff's Eighth Amendment excessive force claim against Defendants Knight and Angelo regarding the April 30, 2021 Incident.

**f) First May 13, 2021 Incident – Eighth Amendment excessive force and First Amendment retaliation claims against Defendant Spitnagel**

On May 13, 2021, after Plaintiff coordinated a hunger strike, Plaintiff contends that Defendants Raypole, Pinson, and Spitnagel entered his cell and strip searched him and his cellmate. According to Plaintiff, Defendant Spitnagel physically assaulted him after Defendant Raypole stated, "alright Glaze your turn." (ECF No. 124, PAGEID #: 1316–17.) Plaintiff alleges that Defendant Spitnagel stated that Plaintiff needed to stop filing grievances and then punched him in the face three times. (*Id.*)

Plaintiff brings an Eighth Amendment excessive force claim, and a First Amendment retaliation claim against Defendant Spitnagel for the First May 13, 2021 Incident. The Undersigned identified no grievances in the record concerning Plaintiff's excessive force claim against Defendant Spitnagel arising from the First May 13, 2021 Incident. Accordingly, the Undersigned finds that Plaintiff failed to exhaust his administrative remedies as to those claims.

It is therefore **RECOMMENDED** that the Court **GRANT** Defendants' Motion (ECF No. 122) as to Plaintiff's Eighth Amendment excessive force claim and First Amendment retaliation claim against Defendant Spitnagel arising from the First May 13, 2021 Incident.

**g) Second May 13, 2021 Incident – Eighth Amendment excessive force claim against Defendants Sheppard, Charlton, Bailey, and Pinson**

Plaintiff alleges that, approximately an hour and a half after the first incident on May 13, 2021, Defendants Sheppard, Charlton, Bailey, and Pinson entered Plaintiff's cell and physically assaulted him. (ECF No. 124, PAGEID ##: 1317–18.) Specifically, Plaintiff asserts that Defendant Sheppard pulled a braid from his scalp and maced him, Defendants Charlton and Bailey kicked and punched him, and Defendant Pinson blocked the view of the assault. (*Id.* ) Plaintiff asserts an Eighth Amendment excessive force claim against Defendants Sheppard, Charlton, Bailey, and Pinson arising from the Second May 13, 2021 Incident.

On May 26, 2021, Plaintiff filed Grievance #391781171, alleging that he was assaulted in his cell by Defendants Raypole, Sheppard, Charlton, "[B]enson" and another officer he could not name. (ECF No. 122-1, PAGEID #: 1241–43.) Grievance #391781171 was denied as a "duplicate complaint" because "[t]his event was a reported use of force from 03/13/2021" and "[t]his concern was previously addressed in the response to complaint RCI0321003950 [Grievance

#391765741].” (*Id.* at PAGEID #: 1242.) Grievance #391781171 progressed to the third step of the grievance process.

As an initial matter, Defendants have provided no evidence that Ohio law or any policy maintained by ODRC allows for the screening out of a grievance on the basis that it is “duplicative.” Ohio requires that “[i]nformal complaints must contain specific information; dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of personnel involved and the name or names of any witnesses.” Ohio Admin. Code § 5120-9-31(J). Plaintiff’s Grievance #391781171 provides personnel names, the events giving rise to the complaint, and the location of the incident. *See Jones*, 549 U.S. at 218 (“Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to ‘properly exhaust.”’)

Even assuming that ODRC has a policy prohibiting duplicate grievances, however, the present record does not establish that Grievance #391781171 duplicates Grievance #391765741, which concerns the March 13, 2021 Incident. *See Horacek v. Carter*, 594 F. Supp. 3d 900, 907 (E.D. Mich. 2022) (“[A] court ‘is not required to blindly accept the state’s application of the procedural rule.”’ (citing *Reeves v. Salisbury*, No. 11-cv-11830, 2012 WL 3206399, at *5 (E.D. Mich. Jan. 30, 2012), *report and recommendation adopted in part, rejected on other grounds*, 2012 WL 3151594 (E.D. Mich. Aug. 2, 2012)). In applying the Michigan Department of Correction’s grievance policy, which expressly prohibits duplicative complaints, courts have explained that “[g]rievances that relate to the same subject matter are not duplicates when ‘they concern different time periods, different individuals, and different conduct.”’ *Diemond v. Nagy*, 752 F. Supp. 3d 862, 868 (E.D. Mich. 2024) (collecting cases), *report and recommendation adopted*, No. 23-12184, 2024 WL 4530287 (E.D. Mich. Oct. 18, 2024).

Plaintiff filed Grievance #391765741 in March 2021 and Grievance #391781171 in May 2021. Although the grievances identify some of the same officers, they describe assaults in different locations: Grievance #391765741 concerns an assault in the captain's office, Grievance #391781171 in Plaintiff's cell. Neither Defendants' briefing nor ODRC's decision rejecting Grievance #391781171 explains why these grievances should nevertheless be treated as duplicative. Viewed in the light most favorable to Plaintiff, the later grievance's filing date, the officers it identifies, and the location of the alleged assault support a reasonable inference that it concerns the Second May 13, 2021 Incident, during which Plaintiff alleges that Defendants Sheppard, Charlton, Bailey, and Pinson entered Plaintiff's cell and physically assaulted him. Defendants therefore have not established that Grievance #391781171 was properly rejected as duplicative or that its rejection on that ground entitles them to summary judgment for failure to exhaust.

Defendants also contend that Grievance #391781171 was filed outside the 14-day timeframe. That argument, however, assumes that Grievance #391781171 concerned the March 13, 2021 Incident which, as discussed above, they have not established. If Grievance #391781171 instead concerned the Second May 13, 2021 Incident, it would have been timely filed. In any event, Grievance #391781171 was rejected as duplicative, not as untimely. Defendants' post-hoc rationalization for rejecting Grievance #391781171 is without merit.

As to Defendants Sheppard and Charlton, Plaintiff identified them by name in Grievance #391781171 as required by Ohio's grievance policy. As to Defendant Pinson, although Plaintiff misspelled his name as "Benson," the Undersigned finds that the misspelling is close enough to "Pinson" to identify him to prison officials as an officer involved in the alleged assault.

As to Defendant Bailey, Grievance #391781171 states that another officer, whom Plaintiff could not name, participated in the alleged assault. The grievance, however, neither identifies Defendant Bailey by name nor provides the descriptive information required by Ohio's grievance procedure to identify him as a participant in the incident. The Undersigned identified no other grievances in the record concerning Plaintiff's excessive force claim against Defendant Bailey. Accordingly, the Undersigned finds that Plaintiff failed to exhaust his administrative remedies as to the claim against Defendant Bailey.

For these reasons, the Undersigned concludes that Defendants have not met their burden of showing that Plaintiff failed to exhaust his administrative remedies as to his Eighth Amendment excessive force claim against Defendants Sheppard, Charlton, and Pinson regarding the Second May 13, 2021 Incident.[3] It is therefore **RECOMMENDED** that the Court **DENY** Defendants' Motion as to Plaintiff's Eighth Amendment excessive force claim against Defendants Sheppard, Charlton, and Pinson regarding the Second May 13, 2021 Incident. It is **RECOMMENED** that the Court **GRANT** Defendants' Motion as to Plaintiff's Eighth Amendment excessive force claim against Defendant Bailey regarding the Second May 13, 2021 Incident.

**h) Third May 13, 2021 Incident – First Amendment retaliation claim against Defendant Gibson**

Plaintiff alleges that, about an hour after the Second May 13, 2021 Incident, Defendant Gibson discovered Plaintiff in his cell with water on the floor, turned off his water, and issued a retaliatory conduct report containing false statements to further harass him. (ECF No. 124, PAGEID #: 1318.) Plaintiff also alleges Defendant Gibson "destroyed [his] property and legal

[3] Grievance #391781171 also names Defendant Raypole but Plaintiff does not bring a First Amendment retaliation claim against Defendant Raypole arising from the Second May 13, 2026 Incident. Thus, this grievance does not exhaust Plaintiff's administrative remedies as to any claim against Defendant Raypole.

materials and documents to prevent evidence of wrongdoing by staff." (*Id.* at PAGEID #: 1319.) Plaintiff brings a First Amendment retaliation claim against Defendant Gibson arising from the Third May 13, 2021 Incident.

The Undersigned identified no grievances in the record concerning Plaintiff's retaliation claim against Defendant Gibson arising from the Third May 13, 2021 Incident. Accordingly, the Undersigned finds that Plaintiff failed to exhaust his administrative remedies as to that claim.

It is therefore **RECOMMENDED** that the Court **GRANT** Defendants' Motion (ECF No. 122) as to Plaintiff's First Amendment retaliation claim against Defendant Gibson arising from the Third May 13, 2021 Incident.

**i) Fourth May 13, 2021 Incident – First Amendment retaliation claim against Defendant Linsey**

Plaintiff further alleges that, following the hunger strike and assault on May 13, 2021, Defendant Linsey moved him to a cold, unsanitary cell containing pepper spray residue that burned his skin, and a nonfunctioning toilet that smelled of urine and feces. (*Id.* at PAGEID #: 1318.) He alleges that he was later moved to another cell "just as deplorable" with black mold and was kept there for more than 90 days. (*Id.* at PAGEID #: 1318–19.) Plaintiff brings a First Amendment retaliation claim against Defendant Linsey regarding the Fourth May 13, 2021 Incident.

The Undersigned identified no grievances in the record concerning Plaintiff's retaliation claim against Defendant Linsey arising from the Fourth May 13, 2021 Incident. Accordingly, the Undersigned finds that Plaintiff failed to exhaust his administrative remedies as to that claim.

It is therefore **RECOMMENDED** that the Court **GRANT** Defendants' Motion (ECF No. 122) as to Plaintiff's First Amendment retaliation claim against Defendant Linsey arising from the Fourth May 13, 2021 Incident.

#### j) Fifth May 13, 2021 Incident – First Amendment retaliation against Defendants Morgan, Diehl, and Wellinghoff

Finally, Plaintiff alleges that, after the alleged May 13, 2021, assault, Defendants Warden Donald Morgan, Institutional Inspector Todd Diehl, and Wellinghoff disabled his phone and JPAY privileges in retaliation for Plaintiff sending his mother a video message of the injuries sustained during the alleged attacks. (ECF No. 124 at PAGEID ##: 1319–20.) Plaintiff brings a First Amendment retaliation claim against Defendants Morgan, Diehl, and Wellinghoff regarding the Fifth May 13, 2021 Incident.

As to Warden Morgan and Inspector Diehl, Plaintiff's grievance records reflect that, on May 2024, 2021, he filed Grievance #391780591 directly against Warden Morgan for "inappropriate supervision," Grievance #391780601 directly against Inspector Todd Diehl for making "bias[ed] administrative decisions," and Grievance #391780581 directly against both Warden Morgan and Inspector Diehl for "inappropriate supervision." (*See* ECF No. 122-1, PAGEID ##: 1227, 1229, 1231.) Even assuming that these grievances related to Plaintiff's First Amendment retaliation claim against Defendants Diehl and Morgan, Plaintiff failed to exhaust them. All three grievances were denied because Plaintiff failed to show the Inspector or Warden was "personally and knowingly involved in a violation of law, rule or policy, or personally and knowingly approved or condoned such a violation." Ohio's grievance procedures require a plaintiff to allege the direct involvement of the institutional inspector or warden to properly exhaust a direct grievance. Ohio Admin. Code § 5120-9-31(L). Thus, Plaintiff failed to exhaust these direct grievances against Warden Morgan and Inspector Diehl under Ohio's grievance procedure. *Reed–Bey*, 603 F.3d at 324; *Jones*, 549 U.S. at 217–18 (noting that proper exhaustion requires "[c]ompliance with prison grievance procedures").

Plaintiff appears to contend that he exhausted Grievance #391781161, filed May 26, 2021, in which he alleges that he was "receiving retaliation" for filing a PREA complaint and that unnamed officers cut off his JPAY so that Plaintiff "could [*sic*] send pictures of my injuries to my family." (ECF No. 122-1, PAGEID #: 1237.) Plaintiff received a merits-based response at each step of the grievance procedure. (ECF No. 134-13, PAGEID #: 1623.) The grievance, however, does not identify Defendants Morgan, Diehl, or Wellinghoff by name nor does it provide the descriptive information required by Ohio's grievance procedure to identify them as participants in the incident.

The Undersigned identified no other grievances in the record concerning Plaintiff's retaliation claim against Defendants Morgan, Diehl, and Wellinghoff arising from the Fifth May 13, 2021 Incident.

It is therefore **RECOMMENDED** that the Court **GRANT** Defendants' Motion (ECF No. 122) as to Plaintiff's First Amendment retaliation claim against Defendants Morgan, Diehl, and Wellinghoff.

**3. Plaintiff's argument that the grievance process was unavailable to him is unpersuasive.**

In his Response, Plaintiff argues that he was not required to exhaust his administrative remedies because the grievance process was unavailable to him. (*See generally* ECF No. 134-13.) Inmates "need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, 578 U.S. 632 (2016) (citing 42 U.S.C. § 1997e(a)). As this Court has explained:

> Even if prison officials meet their burden of establishing non-exhaustion, summary judgment may be denied if a prisoner "has demonstrated that a genuine issue of material fact exists as to whether [defendants] improperly prevented [him] from exhausting his administrative remedies." *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 578 (6th Cir. 2014). In *Himmelreich*, the prisoner conceded that he failed to exhaust his administrative remedies but alleged that a particular prison captain intimidated him "into not filing any more Administrative Remedies." *Id.* at

> 577. The prisoner's statements concerning this intimidation were detailed, including the name of the prison official and the specific threats made, and were made under the penalty of perjury. *See id.* at 577-78. *See also Himmelreich v. Fed. Bureau of Prisons*, No. 4:10-cv-2404 (N.D. Ohio) (Doc. 47, PAGE ID#: 282). Because the prisoner's evidence in support of his claim of intimidation was "specific" and not "vague and conclusory," the Sixth Circuit concluded that the prisoner demonstrated a genuine issue of fact on whether he was prevented by the prison captain from exhausting the grievance procedure. *See id.* at 578. *See also Surles*, 678 F.3d at 457 (denying summary judgment on exhaustion grounds where prisoner "explained that when he 'attempted to file a grievance to expose Defendants [sic] action of corruption etc., agent Christine Hemry refuse[d] to file or process these grievances.' Moreover, at the Step III stage of some of Surles's re-filed grievances, he alleged that Defendants denied him access to the courts as well as the ability to exhaust his administrative remedies.").

*Barfield v. Erdos*, No. 1: 15-CV-696, 2017 WL 496086, at *4 (S.D. Ohio Feb. 6, 2017), *report and recommendation adopted*, No. 1:15-CV-696, 2017 WL 1078745 (S.D. Ohio Mar. 22, 2017).

Here, although Plaintiff indicates that he feared retaliation for filing grievances, he does not identify specific threats or acts of interference that prevented him from filing or pursuing grievances concerning the claims at issue. Indeed, Plaintiff asserts in his unsworn Response that he "did not fail to file grievances or abandon the process before completion . . . even after [Defendants] made the process unavailable." (ECF No. 134-13, PAGEID #: 1621.) Rather, he maintains that he "managed to get it done." (*Id.*)

He also appears to contend that, although Defendants denied him access to electronic means of filing grievances, he was "filing paper complaints before, during, and after" the events underlying this action. In support, Plaintiff points to his allegations in his SAC that "[RCI] has created a custom o[f] denying inmates access to file grievances while housed in [Restricted Housing]." (ECF No. 124, PAGEID #: 1297.) He further alleges that, when he asked how to file a grievance in Restricted Housing, he was told to "write it on paper and forward to staff," and that he then submitted a "paper informal complaint form" alleging that Defendant Linsey improperly confiscated his contraband. (ECF No. 124, PAGEID #: 1297.) Plaintiff attached a paper complaint

dated February 24, 2021, against Defendant Linsey in support of his Response opposing Defendants' Motion. (ECF No. 134-1, PAGEID # 1425.) The complaint alleges that Defendant Linsey found a cellular device in Plaintiff's cell, confiscated it, and "never provided [Plaintiff] with a contraband control slip." (*Id.*)

That complaint, however, does not concern any of Plaintiff's remaining claims. Although the SAC alleges that Plaintiff was later subjected to retaliation for filing a grievance against Defendant Linsey concerning the confiscation, it does not allege that the confiscation itself was retaliatory. The February 24, 2021, paper complaint, therefore, does not establish exhaustion of any remaining claim.

Plaintiff neither identifies nor provides evidence of any other paper grievance addressing the conduct underlying his claims. His generalized assertion that he "may have filed maybe 1,000" informal complaints, notification of grievances, and appeals to the Chief Inspector does not create a genuine issue of material fact as to whether he exhausted those claims. (ECF No. 134-13, PAGEID #: 1617.) Although Plaintiff submitted paper "grievances/informal complaints" filed between September 13, 2021, and May 20, 2023, after his transfer from RCI, those submissions neither concern the claims at issue here nor establish that he filed grievances addressing them. (ECF No. 141, PAGEID #: 1654.)

On this record, Plaintiff has not identified evidence creating a genuine issue of material fact as to whether threats of retaliation or restricted electronic access prevented him from exhausting the claims for which the Undersigned recommends granting summary judgment to Defendants.

## III. PLAINTIFF'S MOTION FOR EXHAUSTION HEARING

Plaintiff's Motion for Exhaustion Hearing asks the Court to conduct an evidentiary hearing to resolve disputed issues concerning exhaustion. Plaintiff argues that an exhaustion hearing is

necessary because Defendants "did not provide one single grievance that was filed using the paper grievance procedure practice of all ODRC institutions to not allow access to electronic grievances while housed in segregation." (ECF No. 140, PAGEID #: 1646.) Plaintiff asserts that he has "nearly 30 potential witnesses" to support this contention. (*Id.*)

The Undersigned finds that an exhaustion hearing is unnecessary. Although Plaintiff asserts that he filed other paper grievances, he has not explained how those grievances relate to the incidents alleged in his SAC or to his claims against the remaining Defendants. Nor has he explained how the proposed witnesses' testimony would resolve any exhaustion issue material to the disposition of Defendants' Motion. As a consequence, Plaintiff has failed to demonstrate the need for an evidentiary hearing.

Accordingly, the Undersigned **RECOMMENDS** that Plaintiff's Motion for Evidentiary Hearing (ECF No. 140) be **DENIED**.

## IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's Response contains a section labeled "Counter Summary Judgment" in which he appears to seek summary judgment as to his Eighth Amendment excessive force claim against Defendants Knight, Angelo, and Brown. Plaintiff submitted what appears to be an excerpt of a court transcript from a state court proceeding against him for assaulting RCI officers in which Defendants Knight, Angelo, and Brown testified regarding the April 30, 2021 Incident. (ECF No. 134-9.) Plaintiff argues that "their credibility is highly questionable." (ECF No. 134-13, PAGEID #: 1628.)

As discussed above, Plaintiff did not exhaust his administrative remedies as to Defendants Knight and Angelo because he did not name them in any grievance or otherwise file a grievance with sufficient factual context to put them on notice that he was bringing an excessive force claim

against them. As to Defendant Brown, Plaintiff points to no evidence in support of his challenge to Defendant Brown's testimony.

Plaintiff also appears to make arguments related to his Eighth Amendment excessive force claim against Defendants Watkins, Raypole, Tedesko, Sexton, and Pinson related to the March 13, 2021 Incident. As discussed above, however, Plaintiff failed to exhaust his administrative remedies against those Defendants as to the March 13, 2021 Incident.

Plaintiff's "Counter Summary Judgment" otherwise largely repeats his arguments opposing Defendants' Motion for Summary Judgment, which the Undersigned has addressed above.

Accordingly, the Undersigned **RECOMMENDS** that, to the extent that the Court construes Plaintiff's Response as a motion for summary judgment on any of his claims, the motion be **DENIED**.

## V. CONCLUSION

For the reasons above, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 122) be **GRANTED in part** and **DENIED in part**. The Motion should be **DENIED** as to the following claims and Defendants:

- Eighth Amendment excessive force claim against Defendants Sheppard, Charlton, and Pinson regarding the Second May 13, 2021 Incident;
- Eighth Amendment excessive force claim against Defendant Brown regarding the April 30, 2021 Incident;
- Plaintiff's Eighth Amendment excessive force and First Amendment retaliation claims against Defendants Sarver and Cash regarding the February 23, 2021 Incident; and

The Court should **GRANT** the Motion in all other respects and **DISMISS** Plaintiff's claims against Defendants Angelo, Bailey, Brabson, Diehl, Ewry, Gibson, Knight, Linsey, Morgan, Raypole, Shoemaker, Spitnagel, Tedesko, Watkins, and Wellinghoff.

It is further **RECOMMENDED** that Plaintiff's Motion for Exhaustion Hearing (ECF No. 140) be **DENIED** and that Plaintiff's Response (ECF No. 134-13), to the extent that the Court construes as a motion for summary judgment, also be **DENIED**.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

*/s/ S. Courter M. Shimeall*
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**